# Edwards *et al. v.* Edwards.

*Petition for a Tenant in Common for the Sale of Lands and Division.*

1. *Trust estate; creation, continuance and termination of trust.*
   Where lands are conveyed to a certain named person as trustee for the use, benefit and behoof of his wife and her children, and in special trust for the said wife and her children or issue "to live, dwell or inhabit thereon and therein, and for the support and maintenance of" the said wife, and "for the support, maintenance, protection and education of said children or issue," and there is conferred upon the trustee the power to sell the corpus of the estate in certain contingencies for reinvestment, to the same uses, upon the death of the wife who was the trustee and mother, the trust terminates, and the full legal title, freed from such trust, unites with the legal title in the children vesting in them an absolute fee simple title in the property conveyed.

2. *Petition by co-tenant for sale of lands for division should aver petitioner's interest.*—Where a tenant in common files a petition to have the property jointly owned sold for division upon the grounds that it cannot be equitably divided, the petition should set out the interest of the petitioner in said lands, and should pray a distribution of such interest of the proceeds to the petitioner.

3. *Same; where minors are interested, guardians ad litem should be appointed.*—In a proceeding to sell lands owned by tenants in common for division, where some of the co-tenants are minors, it is error for the court to render a decree without having the infant defendants represented by a guardian ad litem.

4. *Petition for sale of lands for division; when depositions of witnesses should be suppressed.*—In a proceeding to sell lands

owned jointly for division among the co-tenants, upon the ground that the same cannot be equitably divided, where there is no notice of the filing of interrogatories given as required by the statute' (Code § § 732, 733, 3181) the depositions taken upon such interrogatories should be suppressed.

APPEAL from the Probate Court of Autauga.

Tried before the HON. GEORGE S. LIVINGSTON.

The proceedings in this case were had upon a petition filed in the Probate Court of Autauga county, by the appellee, A. H. Edwards.

It was averred in the amended petition "that A. H. Edwards, the petitioner, was a resident citizen of Autauga county, and was over the age of 21 years; that Holman Edwards, Mary Edwards, Sallie Edwards and Mrs. B. F. Small were the heirs at law of Dr. Charles A. Edwards;" that Dr. Charles A. Edwards died on June 10th, 1900, and that on Dec. 21st, 1889, the above named Holman Edwards died, leaving surviving him three children, viz: Eugene Edwards, Marie Edwards and the petitioner, A. H. Edwards; that on the 11th day of September, 1865, Daniel Pratt conveyed to the said Charles A. Edwards in trust for the use and benefit of Mrs. Agnes P. Edwards, wife of the said Charles A. Edwards, and the children of the said Agnes P. Edwards, by the said Charles A. Edwards, which said children were Holman Edwards, Sallie Edwards, Mary Edwards and Mrs. B. F. Small, certain parcels or lots of land specifically described, lying in and being situated in the town of Prattville, county of Autauga and State of Alabama; that the petitioner, A. H. Edwards and Eugene Edwards and Marie Edwards are the children of Holman Edwards, deceased, and they, together with Sallie Edwards, Marie Edwards and Mrs. B. F. Small are the joint owners of the lots of land specifically described in the complaint, "that the above mentioned lots of land cannot be equitably divided among the several joint owners of the same;" that Sallie Edwards, Mary Edwards and Mrs. B. F. Small are all over the age of twenty-one years. The prayer of the petition was as follows: "Therefore your

petitioner prays that your honor will grant a decree of sale of the said lots, for a division thereof among the several joint owners as follows: a one-fourth interest to Miss Mary Edwards, a one-fourth interest to Miss Sallie Edwards, and a one-fourth interest to Mrs. B. F. Small, all of whom now reside at Chappell Hill, in the State of Texas, and a one-fourth interest to petitioner, A. H. Edwards, Eugene Edwards and Marie Edwards jointly, who reside at Prattville, Alabama."

To the amended petition, the respondents demurred upon the following grounds: 1. That it was shown that the property sought to be sold was conveyed to Dr. Charles A. Edwards in trust, and that the probate court had not jurisdicion to entertain the petition and decree for the sale of said lands. 2. Said petition fails to show what interest the parties to said suit and each of them hold or own in said lands. 3. Said petition fails to disclose what interest, if any, the petitioner A. H. Edwards owned in said lands at the time of the filing of the petition. 4. Said petition fails to show what interest, if any, said Holman Edwards, deceased, held in said lands during his lifetime. 5. Said petition shows that said Holman Edwards had no interest in said lands in his lifetime. 6. The age of Eugene Edwards and Marie Edwards are not set out in the petition. This demurrer was overruled. The respondents filed an answer to the petition in which they admitted the averments thereof, except the averments as to the children of Holman Edwards owning an interest in said lands, which facts they denied in their said answer. They attached to their said answer the deed executed by Daniel Pratt and wife to said Charles A. Edwards, conveying the property described in the petition. After granting and conveying said lands which were described in said deed, the said deed then proceeds in its habendum clause, as follows: "That the said Charles A. Edwards is to hold the above mentioned and described premises as trustee, and they shall be held for the use, benefit and behoof of Mrs. Agnes P. Edwards, wife of said Charles A. Edwards, and the children by the said Charles A. Edwards and as trustee for

them and in special trust for the said Agnes P. Edwards and her said children or issue, to live, dwell and inhabit thereon and therein, and for the support and maintenance of the said Agnes P. Edwards, and for the support, maintenance, protection and education of the said children or issue. The above mentioned and described premises are to be held only as trustee of the said Agnes P. Edwards and, the said children or issue by the said Charles A. Edwards, and are not in any event whatever to be subject to the past, present or future liabilities, debts or obligations, either legal or equitable, of the said Chas. A. Edwards. And whenever the interest and convenience of the said Agnes P. Edwards and her said children or issue, require, demand or justify a sale of the aforesaid premises, then the said trustee, Chas. A. Edwards, is authorized and empowered to sell and convey the same to the highest bidder, either at public or private sale, for cash or on a credit, as he, said trustee, may think best and advisable, and invest the purchase money for the same as soon as collected in some other and suitable real estate, which real estate when so purchased, is to be held by said trustee as the aforedescribed premises, and subject to the same trusts, and for the same purposes." The petitioner propounded interrogatories. The first sentence of interrogatories was as follows: "Interrogatories to be propounded to J. L. Alexander and J. T. Floyd, in the above entitled cause"; which sentence was then followed by several interrogatories. At the end of said interrogatories, it was suggested that H. E. Gipson be appointed commissioner. These interrogatories were filed on March 28, 1902. On the same day, to-wit, March 28th, 1902, a commission was issued to H. E. Gipson. In the commission issued by G. S. Livingston, judge of probate of Autauga county, to H. E. Gipson, it was sated that he was appointed "as commissioner to take the answers to the interrogatories hereunto attached of J. L. Alexander and H. J. May, material witnesses for the plaintiff," in said cause. There was no notice given to respondents of the filing of said interrogatories, and there were no cross interrogatories

[Edwards *et al.* v. Edwards.]

propounded. The depositions of these witnesses as returned by the commissioner set out at length the answers of the said J. L. Alexander to the several interrogatories propounded, which answers were signed by Alexander. Immediately following the deposition of H. J. May, which after stating his name, age and residence in answer to the first interrogatories, then proceeds as follows: "On hearing the other deposition of J. L. Alexander read over, H. J. May subscribed his name to the same and adopts them as his deposition to the same interrogatories." There then follows the signature of H. J. May. It was shown by the deposition of J. L. Alexander that Mrs. Agnes P. Edwards, the wife of Dr. C. A. Edwards, was dead at the time of the filing of the petition; and the witness Alexander further testified that the property which was jointly owned by the parties to the suit could not be equitably divided.

There was appointed no guardian *ad litem* for Eugene Edwards and Marie Edwards, who were minors.

Before entering upon the trial of the cause, the respondents moved the court to suppress the depositions of the witness J. L. Alexander and H. J. May taken in behalf of this cause upon the following grounds: 1. Because said depositions were not taken as in chancery cases. 2. The interrogatories propounded by the witnesses were filed in the office of the judge of probate of Autauga county, Alabama, on the 28th day of March, 1902, and a commission to take the depositions thereon was issued on the same day. 3. Said cause was not at issue when said interrogatories were filed and commission was issued to take said depositions. 4. The defendant nor any of them, nor their attorneys or solicitors were served with notice for ten days of the filing of the interrogatories. 5. Copies of said interrogatories were not served upon the opposite parties or their attorneys. 6. The place or places of residence of the witnesses was not given, nor was affidavit made that same was unknown. 7. The interrogatories filed in the court were for the purpose of taking the testimony of J. L. Alexander and J. T. Floyd, as witnesses, whereas a commission

[Edwards *et al.* v. Edwards.]

was issued to take the deposition of J. L. Alexander and H. J. May. 8. Because the witness H. J. May did not answer the interrogatories propounded to him. 9. Because the deposition of H. J. May was not taken.

The court overruled the motion to suppress the depositions, and from this ruling the defendant duly excepted. The depositions were introduced in evidence, and the copy of the deed from Daniel Pratt and wife to Dr. Charles A. Edwards was also introduced in evidence. Upon the introduction of all the evidence the court rendered a decree granting the prayer of the petitioner, and ordering the property sold. From this decree the respondents appeal, and assign as error the overruling of their demurrers to the petition, the rendition of the decree and the other rulings of the trial court to which exceptions were reserved.

GRAHAM & STEINER, for appellant.—It is the settled law of this State that where an estate "is one merely in trust, the probate court has no jurisdiction to order a sale of it for distribution."—*Rice v. Drennen,* 75 Ala. p. 338; *Wimberly v. Wimberly,* 38 Ala. 40, and authorities therein cited; *Crenshaw v. Crenshaw,* 127 Ala. 208.

The trust involved in this case is an active trust, and therefore the title to the property sought to be sold is held in trust and consequently the probate court is without jurisdiction in the premises.—1 Perry on Trusts (5th ed.) par. 18; *Simmons v. Richardson,* 107 Ala. 697; *Robinson v. Pierce,* 118 Ala. 273; *Huntington v. Spear,* 131 Ala. 414.

A trust, such as created by the Pratt deed, cannot be terminated except by operation of law, by its limitations or by act of the parties.—27 Am. & Eng. Ency. of Law (1st ed.) 309; see also *Whitlow v. Echols,* 78 Ala. 206; *Foster v. Ballantine,* 126 Ala. 393; *Wharton v. Moragne,* 62 Ala. 201.

The guardian *ad litem* for the infant defendants should have been appointed.—Code, § 3180. The depositions should have been suppressed, because they were not taken

as in chancery cases.—Rule 50 Chanc. Pro. Code, §§ 71, 732 and 3180.

GUY RICE, *contra.*—The court had jurisdiction of this cause.—Code 1896, § 3161; *Wilkinson v. Stewart,* 74 Ala. 198; *McMath v. Debardeleben,* 75 Ala. 65; *Mathews v. Mathews,* 104 Ala. 303.

The trust estate created by the deed of Daniel Pratt to Dr. Charles A. Edwards terminated upon the death of Agnes P. Edwards, and the fee simple title in the property conveyed vested absolutely in the children of Agnes P. Edwards.—*McBrayer v. Cariker,* 64 Ala. 50; *Schafer v. Lavretta,* 57 Ala. 14; *Bercy v. Lavretta,* 63 Ala. 374; *Tindal v. Drake,* 51 Ala. 574; *Wilkerson v. May,* 68 Ala. 33. The depositions should not have been suppressed. *Wisdow v. Reeves,* 110 Ala. 418; *Thomas v. Degraffen-reid,* 27 Ala. 561.

McCLELLAN, C. J.—Section 983 of the Code provides: * * * "Any instrument in writing signed by the grantor, or his agent having a written authority, is effectual to transfer the legal title to the grantee, if such was the intention of the grantor, to be collected from the entire instrument." This provision is remedial and, therefore, to be liberally construed to the end of giving the intended operation to a deed though it be inartificially drawn and lacking in positive or direct expression of the grantor's intention. The principle of the statute was patent in the construction and interpretation of the deed involved in the case of *McBrayer v. Cariker,* 64 Ala. 50. It was there held that by a conveyance to Sidney S. Cariker in trust for his mother and her living and afterborn children the grantor intended that the trust should continue only during the life of the mother, and that upon her death the full legal title freed from the trust should unite with the equitable title in her children; and the conveyance was given effect accordingly though it contained no words to that effect. The result was reached mainly upon the considerations that "the preservation of the legal title until they who were entitled to

18c

[Edwards *et al.* v. Edwards.]

take as after-born children could be ascertained, is the characteristic of the trust, distinguishing it, if it is distinguishable, from a naked, dry, or passive trust, which the statute [of uses] divests and removes as an obstacle to the union in the *cestui que trust* of the legal and equitable estate," and that as all the ultimate beneficiaries were necessarily ascertained at the death of the mother, the extension or enlargement of the estate of the trustee beyond her life, "intercepting the vesting of the fee simple, legal estate in the *cestui que trust,* would be without an object and of detriment to them."

The deed involved in the case before us is like that considered in *McBrayer v. Cariker,* in respect of the absence from it of all stipulation or declaration as to the term of the trust, how long it shall continue, or when it shall terminate. So far as the grantor here has expressed himself he may have intended the trust to continue forever. But he could not in fact have meant that, because the trust is for the benefit of certain persons, and those persons cannot live forever to take the benefit. Nor could he even have intended that the trust should continue during the lives of the beneficiaries, because the ends to be subserved by the trust could be fully accomplished short of the deaths of all the beneficiaries; and it is familiar law that a trust estate of this sort ceases as soon as the purposes of its creation have been accomplished. This trust was an active trust, in contradistinction from a dry, naked trust, which the Statutes of Uses executes. The conveyance has the feature which was assumed in *McBrayer v. Cariker,* to save a similar trust from the operation of that statute: Its beneficiaries were Mrs. Edwards and her living and after-born children. Proceeding here upon the assumption indulged in that case this feature would have kept the trust alive until the death of Mrs. Edwards, since that event would have ascertained and fixed the ultimate beneficiaries; and by the same token the trust would then have terminated had its purpose only been to keep the property intact to certain uses until such beneficiaries were thus ascertained. But this was not the sole purpose

of the creation of this trust. One other important feature of this conveyance which did not appear in the *Cariker* deed is the power and duty conferred and imposed upon the trustee to sell the corpus of the estate in certain contingencies for reinvestment to the same uses. But so far as this characteristic is concerned the trust, but for yet other conditions of this conveyance, would still have terminated on the death of Mrs. Edwards. These other conditions are that the property was to be held by the trustee as a home for the wife of the trustee and their children, and for her support and maintenance, and "for the support, maintenance, protection and education" of said children. The language of the instrument in this connection is as follows: "That the said Charles A. Edwards is to hold the above mentioned and described premises as trustee and they shall be held for the use, benefit and behoof of Mrs. Anges P. Edwards, wife of said Charles A. Edwards, and her children by the said Charles A. Edwards, and as trustee for them and in special trust for the said Agnes P. Edwards and her said children or issue, to live, dwell and inhabit thereon and therein, and for the support and maintenance of the said Agnes P. Edwards, and for the support, maintenance, protection and education of said children or issue. The above mentioned and described premises are to be held only as trustee of the said Agnes P. Edwards and the said children or issue of the said Charles A. Edwards, and are not in any event whatever to be subject to the past, present or future debts or obligations, either legal or equitable, of the said Charles A. Edwards." It is clear upon this language that the grantor contemplated that the lands should be held and maintained by the trustee as a home for both Mrs. Edwards and her children, not only during her life, but so long after her death as the children or any of them continued of an age entitling them to the protection and shelter of the parental roof and to the maintenance incident thereto, and to such education as was customary under their circumstances of neighborhood, family and pecuniary conditions. Assuming that the children were of such immature age at the

death of their mother, it is manifest that the grantor's purpose as to them would have been thwarted and defeated if thereupon the trust had terminated and the legal title had passed into them as tenants in common with the necessarily consequent right in each to have the lands—the home—sold and the proceeds distributed among them. In such event the home would have been broken up, and the rights of all "to live, dwell and inhabit thereon and therein," and to be supported, maintained, protected and educated by and out of the whole estate would have been defeated and destroyed. Then, too, some of the children might at the time of Mrs. Edwards' death have attained their majority, or, short of that, have received the support, protection and education contemplated, and been emancipated, while others of them might yet have been of such tender years as for a long time afterwards to require the maintenance of the home for their nurture and protection and its rents, incomes and profits for their support and education. Hence the termination of the trust at the mother's death would not only have deprived the younger children of the use declared in their favor by the instrument, but would have operated to palpable inequality and inequity through the distribution which would have followed in that the older children would have received all the benefits of the trust estate and their full distributive shares in the proceeds of the corpus of the property while the younger would have enjoyed none of the benefits or only a part of the benefits of the trust and no more than the others on distribution. The only way to avoid such unjust consequences, and to secure to all the children the full benefits of the trust estate, the only way to give effect to the manifest intention of the grantor, is to hold that this conveyance created an active trust to continue in every event for the life of Mrs. Edwards, and after her death during the minority of the youngest child, or at least until the youngest child had received the contemplated support, protection, shelter and education from and out of the estate and reached an age meet for emancipation and had been emancipated from the home pro-

vided by the instrument. This construction assumes the execution of the trust according to the intention of the grantor, and puts an end to the trust when its objects have been thus attained. uniting the legal with the equitable title in the *cestui que trust,* upon the consideration that enlargement of the trust estate beyond that point, thereby further "intercepting the vesting of the fee simple, legal estate in the *cestui que trust,* would be without an object, and of detriment to them."—*McBrayer v. Cariker, supra.* That case, as we have seen, is on all-fours with this one in respect of the want of an express limitation of the estate over after the trust should terminate; and in its holding that upon that event the legal estate in fee united with the equitable estate already in the children, it is a direct authority for the like proposition here that, at latest, upon the coming of age of the children of Mrs. Edwards they became holders of the legal, as they had all along been the holders of the equitable, title in fee. It was made to appear on the hearing below that Mrs. Edwards was dead, that one of her four children was also dead, and that each of her other children was over the age of twenty-one years. It was also shown, though perhaps not necessary, that Charles A. Edwards, the trustee, had died recently before the filing of the petition. It is clear, therefore, that the trust had terminated, and that the probate court had jurisdiction upon proper petition to decree the sale of the land for distribution to and among the tenants in common.

The petition in the case to that end was filed by an heir of the deceased child of Mrs. Agnes P. Edwards. It appears that that child died in 1889, but it does not appear whether Mrs. Edwards was dead at that time, nor whether the other children had then attained full age, or, had received the education and protection contemplated by the grantor and ceased to be members of the family though not of full age. Hence, it does not appear that the full legal title in common was in the deceased child, Holman Edwards, at the time of his death. But, as we have seen, it was the intention of the grantor that the whole estate, legal and equitable, should go to these beneficiaries of whom Holman was one, and that was the

[Edwards *et al.* v. Edwards.]

effect of this deed—the equitable estate primarily with which should be united the legal estate upon the termination of the trust. They, therefore, in reality took the whole estate subject to the trust. Each of the children had title in common to the whole estate, subject to the uses declared in the conveyance. Holman Edwards had this equity fee along with the others. None of them took by descent from their father, the trustee; but each took by purchase from the grantor in the deed.: It was an estate by deed and not an estate by descent. The beneficial, equitable title in fee in Holman Edwards was of heritable quality and passed by descent upon his death to his heirs at law, his children, one of whom is the petitioner in this case. When he died they succeeded to his title, the title of the land subject to the trust. The trust having been executed, they take now the title discharged of the trust, the legal title in fee to the undivided portion of the land that would now be his had he lived, and this petition is properly exhibited by one of them.

The petition in this case describes the land, it makes all the tenants in common parties, shows in a way the interest of each, and which of them are infants, and states that "the property cannot be equitably divided among the several joint owners of the same." It was a sufficient petition and its filing gave the probate court jurisdiction to proceed in the matter and upon proof of the allegations of the petition to decree a sale of the land for distribution.

This petition, however, should have alleged the death of Mrs. Agnes P. Edwards, and it should have prayed distribution of one-twelfth of the proceeds to the petitioner, Eugene Edwards and Marie Edwards, respectively, instead of praying the distribution of one-fourth to them jointly. The petition is also inaccurate in describing the tenants in common as heirs of Charles A. Edwards. In respect of this land they are not the heirs of said Edwards, but they take under the deed from Pratt, the surviving children of Agnes P. Edwards directly as purchasers, and the children of Holman Ed-

wards, who took also by purchase, as his, and not Charles A. Edwards' heirs.

The probate court erred in rendering the decree without having the infant defendants represented by guardian *ad litem.*—Code, § 3180.

The court also erred in overruling the motion to suppress the depositions of the witnesses Alexander and May. These depositions were not taken as in chancery cases, in that notice of the filing of the interrogatories was not given as required by the statute.—Code, §§ 3181, 732, 733. Moreover, the interrogatories were not addressed to May at all, and his mode of answering them is, to say the least, not to be commended. We do not think there is any merit in the further ground of the motion that the cause was not at issue when the interrogatories were filed or the depositions taken. On filing the interrogatories, the petitioner should have stated the places of residence of the witnesses.—Rule 60, Chan. P. Code, p. 1213.

The petition should be amended in line with what we have said above; guardians *ad litem* should be appointed for the infant defendants, etc., and depositions should be taken "as in chancery cases" in support of the petition.

Reversed and remanded.

Tyson, Simpson and Anderson, J.J., concurring.